Matthew E. Lewitz, CASB 325379
mlewitz@cozen.com
COZEN O'CONNOR
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Telephone: 213.892.7900
Facsimile: 213.892.7999

Attorneys for Plaintiff
HARLEY FRANK

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARLEY FRANK,<br><br>Plaintiff,<br><br>vs.<br><br>GWG HOLDINGS, INC., and WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR (1) RECOVERY OF INSURANCE PROCEEDS, AND (2) UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Harley Frank, through undersigned counsel, hereby files and submits this Complaint pursuant to 18 Del. C. § 2704(b) and Delaware law, against Defendant GWG Holdings, Inc. ("GWG"), a citizen of Delaware, and Defendant Wells Fargo Bank, N.A., as Securities Intermediary and/or Trustee ("Wells Fargo") and in support thereof, alleges as follows. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff (a citizen of California) and Defendant GWG (a citizen of the State of Delaware), and

Defendant Wells Fargo (a citizen of the state of South Dakota) and because the amount in controversy exceeds $75,000. Plaintiff bases the allegations on personal knowledge of his own actions and on information and belief as to all other matters.

## PARTIES

1. Plaintiff Harley Frank, a resident of Los Angeles County and a citizen of the State of California, is one of the two children of Norman Frank, who was during his lifetime a resident of Los Angeles County and a citizen of the State of California. Plaintiff is undertaking proceedings under California law to open the Estate of Norman Frank (the "Estate") in Los Angeles County and to have himself appointed as its Executor, after which this Complaint will be amended to add the Estate as a Plaintiff in this matter. Norman Frank was at all times relevant to this Complaint a resident of Los Angeles County and a citizen of the State of California.

2. Upon information and belief, GWG is a corporation organized under the laws of Delaware with its principal office and headquarters in Minneapolis, Minnesota. Upon information and belief, GWG is a citizen of the State of Delaware.

3. Upon information and belief, Wells Fargo is a national banking association with its principal office and headquarters in Sioux Falls, South Dakota. Wells Fargo is being named solely in its capacity as Securities Intermediary and/or Trustee. Wells Fargo is a citizen of the state of South Dakota.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff, a citizen of California, and Defendants, GWG, a citizen of Delaware, and Wells Fargo, a citizen of South Dakota, and because the amount in controversy exceeds $75,000.

5. This Court possesses specific personal jurisdiction with respect to Defendants in this action pursuant to U.S.C. Code § 38-61-10, *et. seq.* and § 36-2-803, *et. seq.* because, among other things, Defendants have had extensive personal contact with the forum that relates to the core subject-matter of this action, including action

within the forum to monitor, service, maintain, and collect or assist in collecting on a life insurance policy that insured the life of a California resident (the now deceased Norman Frank). Upon information and belief, these activities of Defendants, included contacting Mr. Frank within the forum while he was living to monitor his health, and—after he passed away—obtaining a copy of Mr. Frank's death certificate in California. Upon information and belief, these activities of Defendants also included Defendants using the California death certificate to collect or assist in collecting the death benefit proceeds from the policy on the life of Norman Frank, who was at all relevant times a resident of Los Angeles County and a California citizen.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within the Central District of California. In addition to the allegations above, this cause of action arose within the forum and relates to a life insurance policy that insured the life of Mr. Frank, who was at all relevant times a resident of Los Angeles County and a citizen of California. Moreover, Plaintiff Harley Frank resides in this forum, and the Estate is being opened in Los Angeles County, California. Relevant witnesses and sources of information and documents relating to the application for the policy and its issuance are believed to be located within this forum. Additionally, upon information and belief, witnesses, documents and sources of information relating to Defendants' efforts to obtain and use the California death certificate for Mr. Frank are believed to be located within this forum.

## **FACTS COMMON TO ALL CLAIMS**

7. This action concerns a life insurance policy that is controlled by and subject to Delaware law, including because, upon information and belief, the policy was applied for by and delivered to a Delaware statutory trust in Delaware, and thus was a Delaware trust owned policy as defined in Delaware's insurable interest statute, 18 *Del. C.* § 2704.

8. As stated by the Supreme Court of Delaware, it is well recognized that, "[s]ince the initial creation of life insurance during the sixteenth century, speculators have sought to use insurance to wager on the lives of strangers." *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059, 1069 (Del. 2011). Insurance policies which are procured as a wager on the life of the person insured not only violate Delaware public policy and its constitutional prohibition on wagering, but they also violate the state's insurable interest requirement, which precludes investors from manufacturing life insurance policies for the purpose of resale. *Id*.

9. Although human life speculators have been a problem for hundreds of years, never has this problem been more wide-spread or involved such vast amounts of money than in recent years. In the early 2000s, institutional investors began pooling large blocks of high-value life insurance policies into special purpose vehicles, such as tax-exempt entities or trusts, the interests of which were effectively securitized and sold to other investors.

10. It is well established, however, that in the early 2000s, there was not a sufficient supply of existing life insurance policies to satisfy investor demand. In particular, investors were interested in high face amount policies insuring the lives of senior citizens, but there were only "a limited number of seniors who had unwanted policies of sufficiently high value." *Price Dawe*, 28 A.3d at 1070. "As a result, STOLI promoters sought to solve the supply side shortage by generating new, high value policies." *Id*. These policies are often referred to as STOLI—meaning stranger origination life insurance. *Id.*

11. One such STOLI promoter was family of interrelated Delaware entities known generally as Coventry.

12. Entities such as Coventry—known in the STOLI industry as "funders"—worked with a nationwide network of insurance producers, who, acting as the funders' agents, assisted the funders by, among other things, identifying senior citizens meeting

the funders' investment criteria and influencing those seniors to become involved in the STOLI transactions the funders were orchestrating.

13. The STOLI transactions orchestrated by funders like Coventry and its agents were presented to hand-selected senior citizens in rosy terms that camouflaged the transactions' impropriety as being a "risk-free" opportunity, "just a good deal," or as being similar to "hitting the lottery" or acquiring a winning "bingo" card.

14. The specific mechanisms by which each funder's STOLI program operated could and often did vary in one respect or another. But each shared basic similarities including that the policies at issue were procured by third parties that lacked an insurable interest in the insureds and that sought to wager on the life of the insureds.

15. Not only do these STOLI policies violate public policy and constitutional bans on wagering and insurable interest laws, but they take advantage of insurers and their senior citizen insureds and otherwise convert a legitimate life insurance product into an illegitimate cash machine whereby a stranger to the insured is more interested in seeing the insured dead than alive.

16. In or about 2005, Coventry procured the life insurance policy (the "Policy") that is at issue in this action insuring the life of Mr. Frank.

17. To induce Mr. Frank to allow the Policy to be procured on his life, Coventry and those acting on its behalf may have represented that the Policy was being procured through a legitimate and legal transaction, or further induced Mr. Frank with the promise of financial compensation if he permitted the Policy to be procured.

18. In reality, however, Coventry procured the Policy through an illegal STOLI scheme and Coventry lacked a valid insurable interest in the life of Mr. Frank.

19. Upon information and belief, Coventry acted through its agent(s) to have an application for the Policy submitted to the insurance company that ultimately issued the Policy as a Delaware life insurance policy.

20. To facilitate these transactions, Coventry created the Norman Frank Insurance Trust dated August 18, 2005 (the "Trust"), as a Delaware statutory trust,

COMPLAINT FOR RECOVERY OF INSURANCE PROCEEDS AND UNJUST ENRICHMENT

installed Wilmington Trust Company ("Wilmington Trust") as the trustee of the Trust, and used the Trust as a cover to procure the Policy without a valid insurable interest.

21. Upon information and belief, Coventry further created a sub-trust (the "Sub-Trust") to the Trust. The Sub-Trust was also established as a mere cover to procure the Policy without a valid insurable interest.

22. Upon information and belief, the Policy insuring the life of Mr. Frank was issued and delivered in Delaware to the Trust.

23. Upon information and belief, in connection with originating the Policy, Coventry, acting through Lasalle Bank, N.A., entered into a non-recourse "loan" arrangement with the Trust, with the Policy serving as the sole collateral for the purported "loan."

24. This purported "loan" was secured solely by a security interest in the Trust and Sub-Trust that held the Policy.

25. As a result of this purported "loan," neither Mr. Frank nor anyone with an insurable interest in his life ever paid any premiums on the Policy. Rather, the loan was used to conceal the fact that such premiums were paid by Coventry for the purpose of creating a wager on Mr. Frank's life.

26. Moreover, the purpose of the Policy was not to provide estate protection for Mr. Frank, but rather he was used as an instrumentality to procure the Policy so that strangers with no insurable interest could wager on his early demise.

27. Upon information and belief, in connection with the purported "loan" becoming due, stranger investors unrelated to Mr. Frank took formal control of the Policy.

28. Wells Fargo, solely in its capacity as securities intermediary, is a common bank used by STOLI investors to serve as record owner of STOLI policies so that, when they invariably sell and resell the policies, the investors' identities need not be disclosed to the insurance carriers and no change of ownership is needed at the carrier level.

COMPLAINT FOR RECOVERY OF INSURANCE PROCEEDS AND UNJUST ENRICHMENT

29. Upon information and belief, Defendants undertook to actively conceal their identity from Mr. Frank and members of his family, including through the use of agent intermediaries.

30. On December 24, 2018, Mr. Frank passed away.

31. Upon information and belief, without notifying Plaintiff or other members of the family of Mr. Frank, a claim for the Policy's death benefit was made by or on behalf of Defendants, and the death benefit was then paid by the issuing insurance company to Defendants, and/or others acting in concert with them.

32. Upon information and belief, following Mr. Frank's death, Defendants continued to actively conceal their identity from Plaintiff or other members of Mr. Frank's family, including through the use of agent intermediaries.

33. To the extent that other entities or individuals may also be proper defendants with respect to the claims set forth herein, they have, upon information and belief, actively concealed themselves from Plaintiff or other members of Mr. Frank's family. As a result, any such potential additional proper defendants that may exist remain unknown to Plaintiff.

## **FIRST CAUSE OF ACTION: RECOVERY OF INSURANCE PROCEEDS DUE TO LACK OF INSURABLE INTEREST**

34. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

35. The Policy is controlled by and subject to Delaware law, including because the Policy was applied for and delivered to the trustee of the Trust in Delaware, and is thus a Delaware trust owned policy as defined in Delaware's insurable interest statute, 18 *Del. C.* § 2704.

36. The Delaware insurable interest statute provides, among other things, that "no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his or her personal representatives or to a person having, at the

time when such contract was made, an insurable interest in the individual insured." 18 *Del. C.* § 2704.

37. The Delaware Supreme Court has clarified that this insurable interest requirement is not satisfied where a third party without an insurable interest uses an insured as an instrumentality to procure a policy for itself as a wager on the insured's life. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059 (Del. 2011).

38. Where an insurance company pays the death benefit on a policy lacking insurable interest, the "executor or administrator" of the insured is entitled to recover such benefits from the beneficiary, assignee, or payee that received the benefits as a matter of common law and statute. 18 *Del. C.* § 2704 (b). *See, e.g., Estate of Malkin v. Wells Fargo Bank, N.A.*, 379 F. Supp. 3d 1263 (S.D. Fla. 2019).

39. Upon information and belief, the Policy at issue in this case was procured without an insurable interest as a wager on Mr. Frank's life.

40. Regardless of whether Mr. Frank knew the details of this scheme or his identity was merely used as an instrumentality to procure the Policy, as set forth above, stranger investors were wagering on the life of Mr. Frank and hoping to trigger a secondary market cash-in on the Policy's death benefit.

41. Upon information and belief, the Policy's death benefit was paid, transferred, or otherwise assigned to Defendants, or another entity working in concert with them.

42. As a consequence, Plaintiff is entitled to recover those death benefit proceeds (plus applicable interest, attorneys' fees, and other costs and damages) from Defendants.

## SECOND CAUSE OF ACTION:  IN THE ALTERNATIVE, UNJUST ENRICHMENT

43. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 33 above as if set forth herein at length, and set forth this cause of action in the alternative to Plaintiff's preceding claim.

44. Defendants' acceptance, retention and/or distribution of the Policy's death benefit proceeds has enriched Defendants to the detriment of Plaintiff. Given the circumstances surrounding the procurement of the Policy, allowing Defendants to retain the proceeds of the Policy is inequitable and without justification including because, among other things, the Policy was procured without insurable interest to wager on the life of Mr. Frank, in violation of applicable law and public policy.

45. Accordingly, Plaintiff is entitled to an award of the Policy's entire death benefit proceeds (plus applicable interest, attorneys' fees, and other costs and damages) from Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1. Judgment in Plaintiff's favor and against Defendants, jointly and severally, in the amount of the Policy's entire death benefit proceeds (plus applicable interest, attorneys' fees, and other costs and damages), to be determined at trial subject to proof.

Dated:     December 23, 2021          COZEN O'CONNOR

By: /s/ Matthew E. Lewitz
Matthew E. Lewitz
Attorneys for Plaintiff Harley Frank

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues upon which trial may be had.

Dated:  December 23, 2021                    COZEN O'CONNOR


By: /s/ Matthew E. Lewitz
Matthew E. Lewitz
Attorneys for Plaintiff
HARLEY FRANK