1  Matthew E. Lewitz (CA Bar No. 325379)
   mlewitz@cozen.com
2  COZEN O'CONNOR
   401 Wilshire Boulevard, Suite 850
3  Santa Monica, CA 90401
   Telephone: 310.393.4000
4  Facsimile: 310.394.4700

5  Gregory A. Star (*Admitted Pro Hac Vice*)
   gstar@cozen.com
6  Isaac A. Binkovitz (*Admitted Pro Hac Vice*)
   ibinkovitz@cozen.com
7  COZEN O'CONNOR
   1650 Market Street, Suite 2800
8  Philadelphia, PA 19103
   Telephone: 215.665.2000
9  Facsimile: 215.665.2013

10 Attorneys for Plaintiff
   HARLEY FRANK

11

12            UNITED STATES DISTRICT COURT

13        FOR THE CENTRAL DISTRICT OF CALIFORNIA

14

15 HARLEY FRANK,                    )  Case No.: 2:21-cv-09916-TJH-PD
                                    )
16            Plaintiff,            )
                                    )  **PLAINTIFF HARLEY FRANK'S**
17    vs.                           )  **MEMORANDUM OF POINTS AND**
                                    )  **AUTHORITIES IN OPPOSITION**
18 LIFE ASSETS TRUST S.A.; PORTIGON )  **TO DEFENDANT PORTIGON**
   A.G., NEW YORK BRANCH f/k/a      )  **A.G., NEW YORK BRANCH F/KA/**
19 WESTLB AG, NEW YORK BRANCH;      )  **WESTLB AG, NEW YORK**
   VIDA CAPITAL, INC.; LIFE         )  **BRANCH'S MOTION TO DISMISS**
20 PARTNERS HOLDINGS, INC.; WELLS   )  **FIRST AMENDED COMPLAINT**
   FARGO BANK, N.A., and DOES 1-10, )
21 inclusive,                       )  **[Filed Concurrently with Declaration**
                                    )  **of Isaac A. Binkovitz; Request for**
22            Defendants.           )  **Judicial Notice and [Proposed]**
                                    )  **Order]**
23                                  )
                                    )  **Hearing Date: May 23, 2022**
24                                  )  **Hearing Time: Under Submission**
                                    )  **Courtroom: 9B**
25                                  )  **Judge: Honorable Terry J. Hatter,**
                                    )  **Jr.**
26                                  )
                                    )  **Action Filed: December 23, 2021**
27 _____  )  **FAC Filed: January 24, 2022**

28

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................7

II.   FACTUAL BACKGROUND ................................................................8

      A.   The STOLI scheme ...................................................................9

      B.   Portigon's involvement in the STOLI scheme ........................11

      C.   Norman Frank's Will and related probate proceedings ..........13

III.  ARGUMENT .....................................................................................14

      A.   This Court has specific jurisdiction over Portigon ................14

            1.   Portigon has purposefully directed activity into California ........15

            2.   Plaintiff's Section 2704(b) claim arises out of or relates to Portigon's contacts with California .................................21

            3.   Exercising jurisdiction would not be unreasonable ....................21

            4.   In the alternative, this Court should permit Plaintiff to supplement its opposition with facts obtained through jurisdictional discovery ...............................................23

      B.   The First Amended Complaint states a claim against Portigon under Section 2704(b) ................................................................24

      C.   The First Amended Complaint plausibly alleges that Portigon received the policy's death benefi ..........................................28

IV.   CONCLUSION .................................................................................30

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agena v. Cleaver-Brooks, Inc.*,
No. 19-CV-00089-DKW-RT, 2019 WL 11248590 (D. Hawaii Oct. 31, 2019) .20

*Agency Y LLC v. DFO Glob. Performance Com. Ltd.*,
No. SACV201716JVSKESX, 2021 WL 4350056 (C.D. Cal. Aug. 4, 2021) .....23

*In re American Apparel, Inc. Shareholder Derivative Litigation*,
2012 WL 9506072 (C. D. Cal. 2012) ...................................................................23

*Axiom Foods, Inc. v. Acerchem International, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ...............................................................................9

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ...............................................................................15

*Brainerd v. Governors of the University of Alberta*,
873 F.2d 1257 (9th Cir. 1989) .............................................................................10

*Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986) ...............................................................................18

*Commercial Travelers' Ins. Co. v. Carlson*,
137 P.2d 656 (Utah 1943) .......................................................................................4

*Continental Ins. Co. v. N.A.D., Inc.*,
16 F. App'x 659 (9th Cir. 2001).........................................................................20

*Estate of Daher v. LSH Co.*,
No. CV 21-03239 TJH,
2021 WL 6809407 (C.D. Cal. Dec. 15, 2021)......................................12, 13, 15

*De Franco v. U.S.*,
18 F.R.D. 156 (S.D. Cal. 1955) ...........................................................................21

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .............................................................................21

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

3

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 ................................................................................................. 18

*Heller v. NBCUniversal, Inc.*,
   CV-15-09631-MWF-KS, 2016 WL 6573985 (C.D. Cal. Mar. 30, 2016) .......... 23

*Jones v. Las Vegas Metropolitan Police Department*,
   873 F.3d 1123 (9th Cir. 2017) ....................................................................... 20

*Klinger v. Corrections Corp. of America, Inc.*,
   No. 4:11CV2299, 2012 WL 6200393 (N.D. Ohio Oct. 23, 2012) .................... 21

*Lacey v. Maricopa County*,
   693 F.3d 896 (9th Cir. 2012) .......................................................................... 22

*Life Assets Trust S.A. v. Portigon A.G., New York Branch*,
   651491/2014 (N.Y. Sup. Ct. May 15, 2014) (the "NY Action") ....................... 6

*Lincoln Ben. Life Co. v. Joanne Bauer Irrevocable Life Ins. Tr.*
   *12-2-2005*, No. 8:12-CV-1729-T-33EAJ, 2013 WL 24590 (M.D. Fla. Jan. 2,
   2013) ............................................................................................................. 14

*Lincoln Benefit Life Co. v. Wells Fargo Bank, N.A.*,
   No. CV 17-02905, 2017 WL 6539244 (D.N.J. Dec. 20, 2017) ........................ 14

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ....................................................................... 24

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir. 2007) ....................................................................... 16

*Milosch v. Direct Merchants Funding LLC*,
   No. SACV 17-00904-CJC(KESx), 2017 WL 10560475 (C.D. Cal. Nov. 14,
   2017) ............................................................................................................. 12

*Morrill v. Scott Financial Corporation*,
   873 F.3d 1136 (9th Cir. 2017) ................................................................ *passim*

*Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.*,
   636 A.2d 892 (Del. 1994) ............................................................................... 19

*Owen v. Paramount Productions*,
   41 F.Supp. 557 (S.D. Cal. 1941) .................................................................... 21

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Panavision Int'l., L.P. v. Toeppen*,
　141 F.3d 1323 (9th Cir. 1998) ................................................................16, 17

*Principal Life Ins. Co. v. Mayer for Mignon Kopel Life Ins. Tr.*,
　No. 09-20244-CIV, 2009 WL 10668947 (S.D. Fla. Dec. 15, 2009) ..................14

*Raynor Bros. v. American Cyanimid Co.*,
　695 F.2d 382 (9th Cir. 1982) ..................................................................21

*Reassure America Life Ins. Co. v. Midwest Resources*, Ltd.,
　721 F. Supp.2d 346 (E.D. Pa. 2010) ........................................................12, 14

*Schwarzenegger v. Fred Martin Motor Co.*,
　374 F.3d 797 (9th Cir. 2004) ................................................................2, 8, 9

*Soo Park v. Thompson*,
　851 F.3d 910 (9th Cir. 2017) ..................................................................22, 23

*Stepanyan v. United States*,
　CV 20-1774-CBM-MAA(x), 2020 WL 8365242 (C.D. Cal. Dec. 14, 2020).....23

*Sun Life Assur. Co. of Canada v. Wells Fargo Bank, N.A.*,
　208 A.3d 839 (N.J. 2019) ......................................................................4

*U.S. for Use and Benefit of Wulff v. CMA, Inc.*,
　890 F.2d 1070 (9th Cir. 1989) ................................................................20

*United States v. United Healthcare Insurance Company*,
　848 F.3d 1161 (9th Cir. 2016) ................................................................22, 23

*Walden v. Fiore*,
　571 U.S. 277 (2014) ............................................................................11

*Wallens v. Milliman Financial Risk Management LLC*,
　509 F.Supp.3d 1204 (C.D. Cal. 2020) .....................................................8

**Statutes**

18 Del. C. § 2704 ................................................................................23

18 Del. C. § 2704(b) ......................................................................*passim*

Cal. Ins. Code § 10113.1(g)(B) ..............................................................4

Cal. Ins. Code § 10113.3(s) ...................................................................4

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

5

Probate Code § 8400(b) ...........................................................................19

Telephone Consumer Protection Act.............................................................12

**Other Authorities**

https://www.govinfo.gov/content/pkg/CHRG-111shrg51547/html/CHRG-
111shrg51547.htm. ..........................................................................5

https://www.sec.gov/news/studies/2010/lifesettlements-report.pdf...........................5

*34 Corpus Juris Secundum*, Executors and Administrators
§ 215 (Feb. 2022)...............................................................................19

*Black's Law Dictionary* (11th ed. 2019) ................................................19

FRCP 15(c)(1)(B) ............................................................................21, 22

Rule 12(b)(2)................................................................................*passim*

Rule 15.......................................................................................*passim*

Rule 15(a)(2) ..................................................................................21

Rule 15(c) ..................................................................................21, 24

Rule 17 .........................................................................................20

Rule 17(a) ......................................................................................20

Rule 17(a)(3)................................................................................*passim*

U. Pa. J. Bus. L. 173, 198–99 (2010) ...........................................................5

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I.     **INTRODUCTION**

According to Defendant Portigon A.G. (Portigon), California courts are powerless to hold it answerable for wagering on the lives of California citizens in the hope of profiting from their early demise. That position is as legally erroneous as it is offensive.

In 2010, Portigon acquired an interest in a stranger-originated life insurance (STOLI) policy on the life of Norman Frank, a California resident then in his eighties. For the next several years, Portigon kept the policy in effect by paying its premiums. As a result, Portigon caused Mr. Frank to endure for several years the various harms associated with being an insured under a STOLI policy—harms that have prompted most states, including California, to outlaw such policies. The harms that Portigon inflicted on Mr. Frank included contacting and surveilling him and his family to assess how soon he would die; trading in his confidential medical information; and using him as an instrumentality in a fraud on an insurance company. After Mr. Frank died, Portigon reached into California yet again to obtain his death certificate in order to collect the policy's death benefit.

In this action, Plaintiff seeks to recover that amount. Portigon argues that it lacks any suit-related contacts with California and that it is thus beyond this Court's jurisdiction. But, as summarized above and as further discussed below, there were many such contacts. In attempting to escape this Court's jurisdiction, Portigon relies on language taken out of context from *Morrill v. Scott Financial Corporation,* 873 F.3d 1136 (9th Cir. 2017), and ignores the passage from *Morrill* that is most salient to this motion: *Morrill's* express reaffirmation of "the well-established rule ... that, when a defendant engages in tortious activity toward a plaintiff in the state where that plaintiff resides, the defendant is subject to personal jurisdiction there." *Id.* at 1148. Portigon's lack-of-jurisdiction argument fails.

Its two failure-to-state-a-claim arguments fare no better. Portigon first argues that Plaintiff is not Norman Frank's executor, and that Plaintiff thus lacks standing to

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

bring a claim under 18 *Del. C.* § 2704(b). In fact, Plaintiff is (and, at the time he brought this action, was) his father's executor. But even if Plaintiff were not yet his father's executor, Rule 17(a)(3) and Rule 15, which allow for the substitution of parties, would supply the remedy. Portigon next argues that Plaintiff has failed to allege Portigon's receipt of the policy's death benefit. Portigon is wrong: Plaintiff has alleged that the death benefit was paid to one or more of the defendants, including Portigon. Because the details are peculiarly within Portigon's possession and control, such an allegation satisfies the liberal notice-pleading standard. Portigon knows that Plaintiff is alleging that it received the death benefit, and is thus well equipped to respond to that allegation.[1]

## II.    FACTUAL BACKGROUND

Portigon submits no declaration or any other evidence in support of its lack-of-personal-jurisdiction argument. Therefore, all of the allegations of the First Amended Complaint are uncontroverted—and thus must be accepted as true for purposes of deciding the issue of personal jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

In arguing that this Court may not credit those allegations, Portigon misrepresents *Schwarzenegger*. Portigon represents *Schwarzenegger* as standing for the proposition that "[a]lthough uncontroverted allegations in the complaint must be taken as true, the plaintiff cannot simply rest on the bare allegations of its complaint" in opposing a Rule 12(b)(2) motion. (Portigon Mem. at 5.) But what *Schwarzenegger* actually says is this: "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." 373 F.3d at 800 (internal citations and quotation marks omitted). So where, as here, the defendant challenges personal jurisdiction without controverting the complaint's allegations, the plaintiff can indeed rely on those allegations. If Portigon believed that

---

[1] Plaintiff does not object to the dismissal of his unjust-enrichment claim.

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

any of the allegations of the First Amended Complaint were untrue, it could have and should have submitted evidence to contradict them.

But even though it has the right to rely entirely on the allegations of the First Amended Complaint, Plaintiff will go further and will share with the Court documentary evidence that it has uncovered about the extent of Portigon's involvement in acquiring and maintaining the policy on Mr. Frank's life. The allegations and evidence relevant to this motion, and reasonable inferences from those allegations and evidence can be summarized as follows.

### A.   The STOLI scheme

A life-insurance policy that is procured by an investor with the expectation that it will be sold to that investor or to another investor is known as stranger-originated life insurance, or STOLI. (First Amended Complaint ("FAC"), Dkt. 26, ¶¶ 12–19.) Under Delaware law, STOLI is illegal. (FAC ¶¶ 12, 42–43.)

This action arises from a notorious STOLI scheme operated by a family of Delaware entities known collectively as Coventry. (FAC ¶ 15.) Under the scheme, Coventry procured life-insurance policies on senior citizens throughout the country and then arranged for those policies to be sold to investors. (FAC ¶¶ 14–19.)

As part of the scheme, in or around 2005 Coventry procured a STOLI policy on the life of Norman Frank (the Policy). (FAC ¶¶ 20–24.) Coventry placed the policy in a newly-created Delaware trust. (FAC ¶¶ 25–27.) Thereafter, stranger investors took control of the policy. (FAC ¶ 32.)

STOLI investors hide their identities from insurance companies, from the insureds, and from the families of the insureds by employing securities intermediaries to serve as the policies' owners of record. (FAC ¶¶ 33, 35, 37.) That way, the investors can acquire and sell the beneficial interests in the policies without having to tell the insurance companies or anyone else about the transactions. (FAC ¶ 34.) That is what happened here. (FAC ¶ 34.)

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Mr. Frank died in December 2018. (FAC ¶ 36.) Thereafter, a claim for the Policy's death benefit was submitted to the insurance company. (FAC ¶ 37.) As the securities intermediary, and thus as the Policy's record owner, Wells Fargo would have been involved in making the claim and would have been the defendant who received the death benefit in the first instance. (FAC ¶ 37.) Because of the lengths to which STOLI investors and their agents go to conceal their activities, Plaintiff does not yet know the precise details of what Wells Fargo did with the death benefit after receiving it, but Wells Fargo presumably provided the death benefit to the Policy's beneficial owner. (FAC ¶¶ 33–38.)

The Policy is governed by Delaware law. (FAC ¶ 41.) In recognition of the harms that they inflict on the insureds, their families, and society generally, Delaware law makes STOLI policies illegal and allows the estates of deceased insureds to recover any death benefits paid out to STOLI investors. (FAC ¶¶ 42–45.) Plaintiff has brought this action on behalf of Mr. Frank's estate to pursue such a recovery. (FAC ¶ 48.)

Most other states, including California, *see* Cal. Ins. Code §§ 10113.1(g)(B), 10113.3(s), also make STOLI schemes illegal. *See, e.g., Commercial Travelers' Ins. Co. v. Carlson*, 137 P.2d 656 (Utah 1943) (referring to "[t]he almost universally accepted rule ... that a party insuring a human life must have an insurable interest therein ... or the policy will be void...."); *Sun Life Assur. Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839, 852 (N.J. 2019) (citing the anti-STOLI statutes of thirty states, including California); *id*. at 165 (discussing STOLI prohibitions under common law). As these states recognize, STOLI policies violate public policy and harm insurance companies and the senior-citizen insureds. (FAC ¶ 19.)

Some of the harms that STOLI policies inflict on the senior-citizen insureds are moral and psychological: the insureds know that, for so long as their policies are in effect, they are worth more dead than alive to certain investors who have an interest

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

in their early demise, and they know that those investors are using their lives as instrumentalities with which to commit fraud.

Other harms are more concrete. For example, as happened here, STOLI insureds and their families are monitored and surveilled by investors. As part of STOLI schemes, "the senior must agree to periodic phone calls or visits, to monitor his or her own continued existence. Sadly enough, if life expectancy is less than a year, these grim reaper calls can occur as frequently as monthly." Statement of James Avery, Jr., U.S. Sen. Special Committee On Aging, Betting on Death in the Life Settlement Market: What's at Stake for Seniors, No. 111-4 (Apr. 29, 2009).[2] In addition, the insureds' private medical information is constantly being passed around from investor to investor as the policies are valued and re-valued based on when the investors anticipate the insured is likely to die. *See* Susan Lorde Martin, Betting on the Lives of Strangers: Life Settlements, STOLI, and Securitization, 13 U. Pa. J. Bus. L. 173, 198–99 (2010). Victims may also face unwanted tax liability from having their (fake) premium-finance loans "forgiven," and may find themselves barred from taking out needed life insurance in the future because STOLI investors have already exhausted their insurability. *See* Martin, supra, at 198; Staff Report to the SEC Commission by the Life Settlements Task Force, Jul. 22, 2010, at 13.[3]

### B.    Portigon's involvement in the STOLI scheme

Plaintiff has pleaded on information and belief that, as the Policy's beneficial owner, Portigon maintained the Policy while Mr. Frank was in California, contacted and monitored Mr. Frank and his family while they were in California, collected Mr. Frank's California death certificate, and received the Policy's death benefit. (FAC ¶¶ 9, 34, 37.)

---

[2] Available at https://www.govinfo.gov/content/pkg/CHRG-111shrg51547/html/CHRG-111shrg51547.htm.

[3] Available at https://www.sec.gov/news/studies/2010/lifesettlements-report.pdf.

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

Not only has Portigon declined the opportunity to rebut these allegations about its activities with respect to the Policy, but the allegations rest on substantial documentary evidence. Much of that evidence came to light in a prior New York state court action captioned *Life Assets Trust S.A. v. Portigon A.G., New York Branch*, 651491/2014 (N.Y. Sup. Ct. May 15, 2014) (the "NY Action"). The evidence is as follows.

In 2007, Portigon (through its predecessor WestLB AG) lent $250 million to Life Assets Trust S.A. (through its predecessor Life Funding I, LLC) for the purpose of acquiring and paying premiums on life-insurance policies to be held in a trust for the benefit of Life Assets Trust S.A. (Declaration of Isaac A. Binkovitz ("Binkovitz Decl.") Ex. 1, NY Action Compl. at 2-3.) As collateral for Portigon's loan, Life Assets Trust S.A. pledged its beneficial interest in the trust (and thus in the policies). (*Id.* at 3.) Portigon was to receive 80% of the policies' proceeds, and had the right both to establish the criteria by which the policies were to be selected, and to choose the life-expectancy providers that would estimate the insureds' life expectancies for purposes of valuing the policies. (*Id.* at 3-4; *see also* Binkovitz Decl., Ex. 2, Loan and Security Agreement.) In short, while the transaction was documented as a "loan," it was in effect a joint venture between Life Assets Trust S.A. and Portigon for the purpose of wagering on the lives of senior-citizen insureds and profiting from their early demise. (Binkovitz Decl., Ex. 1, NY Action Compl. at 4.)

Ultimately, Life Assets Trust S.A. was unable to satisfy its obligations to Portigon. (*Id.* at 7-9; Binkovitz Decl., Ex. 3, Notice of Default.) In May 2014, Portigon gave notice of its intent to foreclose on the portfolio of policies—a course of action that Life Assets Trust S.A. brought the NY Action to try to enjoin. (Binkovitz Decl., Ex. 4, Notice of Foreclosure; Binkovitz Decl., Ex. 1, NY Action Compl. at 8-9.) Portigon succeeded in foreclosing in August 2014, thereby becoming the beneficial owner of the policies in the portfolio. (Binkovitz Decl., Ex. 5, NY Action Am. Compl. at 1-2, 8-11.)

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    There is reason to believe that from 2010 onwards the Policy was among the

2    policies in the portfolio. Through a November 1, 2020 Purchase, Sale, Assignment,

3    Assumption and Novation Agreement (Binkovitz Decl., Ex. 6), Life Assets Trust S.A.

4    purchased a number of policies from a life-settlement fund known as GWG DLP

5    Funding, LLC. The Policy was listed on the schedule of policies purchased. (*See id*.)

6    Thus, there is reason to believe that Portigon was involved in evaluating the Policy

7    and in analyzing Mr. Frank's life expectancy in connection with the 2010 acquisition

8    of the Policy; that Portigon provided the funds through which the Policy was acquired;

9    that Portigon monitored Mr. Frank's health thereafter to determine whether it made

10   economic sense to keep the Policy in effect by continuing to pay its premiums; and

11   that in 2014 Portigon became the Policy's sole beneficial owner.

12   ### C.   <u>Norman Frank's Will and related probate proceedings</u>

13   Norman Frank died with a Will.[4]  (RJN, Ex. 1.) Article VII of the Will states,

14   in relevant part: "I nominate HARLEY R. FRANK as Executor of this Will." (*Id.*) On

15   February 4, 2022, Plaintiff filed in the Probate Division of the Los Angeles Superior

16   Court a petition for probate attaching the Will, asking that the Will be admitted to

17   probate, and asking that, in accordance with the Will, the court appoint him personal

18   representative or executor. (*Id.*) The probate court held a hearing on that petition on

19   March 14, 2022, but was unable to make the appointment at that time because the

20   Will that was submitted was not the true original. Plaintiff accordingly filed another

21   petition under the lost-will procedures to have himself appointed as the administrator

22   of the estate in the absence of an original will. The hearing on that petition is

23   scheduled for May 18, 2022, and Plaintiff has every reason to believe that the probate

24   court will grant the petition.

25

26

27   _____

[4] Mr. Frank's Will and the renewed petition have been filed in the Probate
28   Division of the Superior Court of the State of California, County of Los Angeles,
Case No. 22STPB01131 (the Probate Action). (Pl.'s Request for Judicial Notice
(RJN), Exhibits. A-B.)

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

### III.   **ARGUMENT**

#### A.   **This Court has specific jurisdiction over Portigon**

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*, *supra,* 374 F.3d at 800.  But where, as here, "the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. In such cases, [courts] only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (internal quotation marks omitted); *see also Wallens v. Milliman Financial Risk Management LLC*, 509 F.Supp.3d 1204, 1216 (C.D. Cal. 2020) (in ruling on personal jurisdiction, "the court will draw all reasonable inferences in [the] plaintiff's favor").

As noted above, "uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, *supra,* 374 F.3d at 800. And "all reasonable inferences" are drawn in the plaintiff's favor. *Wallens*, supra, 509 F.Supp.3d at 1216. Because Portigon has submitted no evidence in support of its motion, all of the allegations of Plaintiff's First Amended Complaint are uncontroverted and must be taken as true, and all reasonable inferences from those allegations and from Plaintiff's other evidence must be drawn in Plaintiff's favor.

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 800–01 (internal citations and quotation marks omitted).

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

The minimum-contacts analysis consists of a three-prong test: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id*. at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id*. (internal citations and quotation marks omitted).

This Court has personal jurisdiction over Portigon because each prong of the three-part minimum-contacts test is met.

### 1. Portigon has purposefully directed activity into California

Plaintiff agrees with Portigon that in this non-contract case the "purposeful-direction" test, rather than the "purposeful availment" test, applies. Portigon purposefully directed its activities into California because it "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered" in California. *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

#### a. The first step of the purposeful-direction test is satisfied because Portigon committed intentional acts

"[A]n intentional act is one denoting an external manifestation of the actor's will ... not include[ing] any of its results, even the most direct, immediate, and intended." *Morrill*, 873 F.3d at 1142 (internal quotation marks omitted)). As explained above in the Factual Background section, Plaintiff's uncontroverted

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

allegations and evidence, and reasonable inferences that can be drawn from those allegations and evidence, show that Portigon committed many such acts. In connection with Life Asset Trust S.A.'s acquisition of the Policy in 2010, Portigon was involved in evaluating the Policy and in analyzing Mr. Frank's life expectancy. Portigon provided the funds by which the Policy was acquired in 2010. Thereafter, it paid the Policy's premiums each year, after monitoring and contacting Mr. Frank and his family to confirm that the wager on his life was worth keeping in effect. In 2014, Portigon acquired the Policy's sole beneficial interest. And, on information and belief, Portigon obtained Mr. Frank's California death certificate and used it to claim the Policy's death benefit. All of these are intentional acts.

### b. The second step of the purposeful-direction test is satisfied because Portigon expressly aimed the intentional acts at California

In *Morrill*, the Ninth Circuit reaffirmed "the well-established rule ... that, when a defendant engages in tortious activity toward a plaintiff in the state where that plaintiff resides, the defendant is subject to personal jurisdiction there." 873 F.3d at 1148. It cited, as illustrating the rule, *id.*, the decision in *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir. 1989), which the *Morrill* court described as holding that "personal jurisdiction in Arizona [is] established by communications sent by out-of-state defendant to recipients in Arizona that allegedly interfered with plaintiff's contractual and other rights." The *Morrill* court thus recognized that the rule applies even where the defendant engages in the tortious activity from outside the forum state.

Under this rule, Portigon has satisfied the second element of the purposeful-direction test: Portigon committed the intentional acts at issue toward a plaintiff in California. *See Brainerd*, 873 F.2d 1257, 1259 (9th Cir. 1989) (purposeful-direction test satisfied as to Arizona where defendant "knew the injury and harm stemming

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

from his communications [sent from Canada] would occur in Arizona, where [plaintiff] planned to live and work").

The analysis would be different if, at the time when Portigon acquired the Policy, Mr. Frank was a resident of some other state and later moved to California. In that situation, Portigon's relationship with California arguably would have arisen not out of "contacts that [Portigon] *[it]self* create[d] with [California]," *Morrill*, 873 F.3d at 1143 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)), but rather out of unilateral actions taken by Mr. Frank. Here, however, Portigon acquired the Policy, and directed its activities toward Mr. Frank and his family, while Mr. Frank and his family were in California.

This distinction is what *Morrill* is all about: making sure that the defendant is not dragged into a forum merely because of the unilateral acts of the plaintiff. The *Morrill* court was just applying the Supreme Court's decision in *Walden*, which held that a law-enforcement officer who had unlawfully seized money from two travelers in an airport in *Georgia* could not be sued in *Nevada* simply because the travelers happened to live there. *See Morrill*, 873 F.3d at 1143–44. That is the kind of situation where the defendant's contacts with the forum state would be "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286. But that does not describe the situation here, where Plaintiff is suing Portigon in the forum to which Portigon knowingly directed its activities.

Portigon reads *Morrill* to mean that directing activity into a particular forum because the plaintiff resides in that particular forum must count as a "random, fortuitous, or attenuated" contact with that forum. (Portigon Mem. at 8–10.) That is a misreading of *Morrill*. The *Morrill* court found that "any link to Arizona [the forum state] ... occurred only because it happened to be where Plaintiffs resided." 873 F.3d at 1144. But context is key: the *Morrill* defendants had focused their conduct on Nevada, where the plaintiffs were temporarily working, and not on Arizona, where the plaintiffs permanently resided. *Id*. So the place that the defendants targeted

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

(Nevada) was different from the place where the effects were felt (Arizona) and where the plaintiffs had brought suit. In that situation, it makes sense to describe the defendants' contacts with Arizona as "random, fortuitous, or attenuated." Here, by contrast, the place that Portigon targeted (California) is the same as the place where the effects were felt and where Plaintiff has brought suit. So the circumstances here, unlike those in *Morrill*, satisfy the requirement that the "tort must involve the forum state itself, and not *just* have some effect on a party who resides there." *Id*. at 1145 (emphasis added). In much the same way, out-of-state defendants that contact a California resident in violation of the Telephone Consumer Protection Act are routinely found to have "purposefully directed ... activity to California." *Milosch v. Direct Merchants Funding LLC*, No. SACV 17-00904-CJC(KESx), 2017 WL 10560475, at *2 (C.D. Cal. Nov. 14, 2017) (citing cases). And in much the same way, the court in *Reassure America Life Ins. Co. v. Midwest Resources, Ltd.*, 721 F. Supp.2d 346 (E.D. Pa. 2010) concluded that the defendant, a STOLI investor, had "purposefully directed its activities at this district by purchasing an interest in the insurance policy that is the subject of this action, which was issued in Pennsylvania and insured the life of a Pennsylvania resident, and by maintaining subsequent contacts with Pennsylvania residents in furtherance of its interest in the policy." *Id*. at 349.

Insofar as the decision in *Estate of Daher v. LSH Co.*, No. CV 21-03239 TJH (SKx), 2021 WL 6809407 (C.D. Cal. Dec. 15, 2021) may have taken an approach to *Morrill* different from the approach advanced here, Plaintiff respectfully requests that the Court decide *this* motion in *this* case based on the specific arguments that are being presented here.

But even if the Court were to follow Portigon's reading of *Morrill*, there are many relevant factual distinctions between *Daher* and this case that would warrant finding purposeful direction here. In particular, the investor in *Daher* had supported its Rule 12(b)(2) motion with a detailed declaration that specifically denied

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

"undertak[ing] any act in California in connection with the events or claims alleged in" the suit, or conducting any other activities in California. (No. CV 21-03239 TJH (SKx) at Dkt. 30-2.) Here, by contrast, Portigon has submitted no evidence whatsoever in support of its Rule 12(b)(2) motion, and thus concedes for purposes of the motion the truth of the FAC's allegations. Portigon thus concedes for purposes of this motion that it maintained, contacted, and monitored Mr. Frank and his family while they were in California, and collected Mr. Frank's California death certificate. Whatever the situation in *Daher* may have been, these are all allegations that the Court must accept as true for the purposes of deciding this motion—and they all describe activities that Portigon directed into California.

### c.   The third step of the purposeful-direction test is satisfied because Portigon knew that the intentional acts would likely cause harm in California

As noted in the Factual Background section above, an investor that purchases and maintains a STOLI policy undermines public policy by causing the senior-citizen insured and his or her family to suffer a whole host of harms. Portigon acquired an interest in the Policy in 2010, knowing that it insured a California resident. Every year thereafter, Portigon decided to pay the Policy's premiums and thereby extend the Policy's term—and thus the harms that it was causing in California. As part of its fraud, Portigon contacted and monitored Mr. Frank and his family in California. In committing all of these intentional acts, Portigon knew that it was likely causing harm in California. Accordingly, Portigon has satisfied the third step of the purposeful-direction test.

Such a conclusion is in keeping with decisions of a number of other federal courts that have recognized that an investor who owns and maintains a life-insurance policy on another person should have to answer for any consequences resulting from that relationship in the insured's home forum. Those courts recognize "the unique nature of a life insurance policy that takes a direct interest in and guarantees the life

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

of an individual." *Lincoln Benefit Life Co. v. Wells Fargo Bank, N.A.*, No. CV 17-02905, 2017 WL 6539244, at *3 (D.N.J. Dec. 20, 2017). They understand that owning and keeping in effect a life-insurance policy on another individual may suffice to subject, or at least should weigh strongly in favor of subjecting, the owner to personal jurisdiction in the insured's home forum. Thus, for example, the *Lincoln* court suggested that because Wells Fargo, as securities intermediary, had owned a STOLI policy on the life of a New Jersey resident, Wells Fargo might for that reason alone be subject to personal jurisdiction in New Jersey. *See id.* at *3 ("[T]here are other considerations that support finding personal jurisdiction over Wells Fargo in New Jersey. Taking a holistic approach as the *Burger King* Court did, the Court emphasizes the unique nature of a life insurance policy that takes a direct interest in and guarantees the life of an individual....") (internal citation omitted). *See also Reassure America Life*, 721 F. Supp.2d at 349 (E.D. Pa. 2010) (discussed *supra*); *Principal Life Ins. Co. v. Mayer for Mignon Kopel Life Ins. Tr.*, No. 09-20244-CIV, 2009 WL 10668947 at *3 (S.D. Fla. Dec. 15, 2009) (finding that Florida had specific jurisdiction over a non-resident STOLI promoter who caused a STOLI policy to be issued on the life of a Florida resident); *Lincoln Ben. Life Co. v. Joanne Bauer Irrevocable Life Ins. Tr. 12-2-2005*, No. 8:12-CV-1729-T-33EAJ, 2013 WL 24590, at *3 (M.D. Fla. Jan. 2, 2013) (similar).

All of these decisions make sense because an investor that purchases and maintains a STOLI policy—and that contacts, monitors, and otherwise invades the insured's privacy while the insured is alive—causes real harm in the insured's state of residence. Portigon ignores all of these harms, arguing that, "because Delaware considers STOLI policies to be contrary to public policy," neither Plaintiff nor his family was harmed. (Portigon Mem. at 10.) That argument makes no sense. The reason why Delaware considers STOLI policies to be contrary to public policy is that STOLI policies cause harm in all the ways we have described. By allowing the

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

insured's estate to recover the death benefit from the wrongdoer, Delaware allows the estate some recompense.

To the extent that the *Daher* decision may have viewed the issue of harm differently, Plaintiff again asks the Court to decide the instant motion on the merits of the particular arguments made here. And, again, the relevant facts at issue here are materially different from those at issue in *Daher*. Unlike the investor in *Daher*, Portigon concedes that it surveilled Mr. Daher in California and contacted him and his family there—acts that are among the very harms that are widely recognized as being associated with STOLI policies.

## 2.    Plaintiff's Section 2704(b) claim arises out of or relates to Portigon's contacts with California

In the Ninth Circuit, courts apply "a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The question is: "but for [the defendant's] contacts with ... California, would [the plaintiff's] claims ... have arisen?" *Id.*

Here, the answer is no. From 2010 onwards, Portigon paid the premiums on the Policy, thereby keeping the Policy in effect. But for the payment of those premiums, there would be no proceeds for Plaintiff to claim from Portigon, and thus there would be no Section 2704(b) claim. Similarly, but for Portigon's acts in contacting and monitoring Mr. Frank and his family in California, and in obtaining Mr. Frank's death benefit in California, there would have been no proceeds for Plaintiff to claim from Portigon. Therefore, Plaintiff's claim arises out of and relates to Portigon's contacts with California.

## 3.    Exercising jurisdiction would not be unreasonable

Portigon cannot meet its burden of showing that the exercise of personal jurisdiction would be unreasonable. In assessing reasonableness, a district court balances seven factors: "(1) the extent of the defendants' purposeful interjection into

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Cozen O'Connor
401 Wilshire Boulevard
Suite 850
Santa Monica, CA 90401

the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1110 (9th Cir. 2004)).

Portigon ignores almost all of these factors—and for that reason alone fails to meet its burden. But even if Portigon tried to meet its burden, it would fail because the factors weigh strongly in favor of reasonableness:

**Purposeful interjection.** This factor weighs in favor of reasonableness because, as explained above, Portigon purposefully directed activities into California by acquiring a STOLI policy on a California insured, by maintaining that policy and thereby extending the harms suffered by the insured, by surveilling and contacting the insured and his family in California, and by obtaining the insured's California death certificate.

**Burden on litigating in the forum.** The Ninth Circuit has held that "unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Panavision Int'l., L.P. v. Toeppen*, 141 F.3d 1323 (9th Cir. 1998). If that standard was difficult to meet in 1998, it is all the more difficult to meet today, when email, videoconferencing, electronic filing, and other technological advances greatly facilitate the process of litigating from out of state. Portigon does not even try to make a showing of any burden. Nor could it plausibly do so. It is represented by California-based counsel (the same counsel as represents its co-defendant Wells Fargo), and—as a simple PACER search reveals—Portigon is a frequent litigant in California federal court.[5]

---

[5] *See, e.g.*, Case Nos. 3:14-cv-1493 (N.D. Cal. March 31, 2014); 1:13-cv-5278 (N.D. Cal. Nov. 13, 2013); 3:08-cv-00890 (N.D. Cal. Feb. 8, 2008); 2:13-cv-1476 (E.D. Cal. July 23, 2013); 3:13-cv-1466 (S.D. Cal. June 25, 2013); 3:14cv1493

***Sovereignty***. Although Portigon is a German bank, it has an office in New York, does business in the United States, and made the considered decision to wager on the lives of U.S. citizens, including Mr. Frank. Therefore, even if Portigon had raised this factor as weighing against jurisdiction, its weigh would be slight.

***Efficiency, convenience, and California's interest.*** All of these factors weigh in favor of jurisdiction. First, Plaintiff is a California resident and thus finds this forum to be the most convenient forum. Second, although Delaware law governs Plaintiff's claim, "California maintains a strong interest in providing an effective means of redress for its residents. . . ." *Panavision Int'l*, 141 F.3d at 1323. Finally, exercising jurisdiction over Portigon will allow Plaintiff's claims against all defendants to be asserted in a single forum rather than having to be divided piecemeal among different forums.

***Existence of an Alternative Forum.*** Although Plaintiff believes that Portigon can be sued in New York, Portigon makes no argument about the existence of an alternative forum or about whether it would object to being sued in New York.

\*      \*      \*

Plaintiff has established that Portigon purposefully directed its activities into California and that Plaintiff's Section 2704(b) claim against Portigon arises from or relates to those activities. Portigon has failed to meet its burden of establishing that personal jurisdiction would be unreasonable. Therefore, this Court has jurisdiction over Portigon and should deny its motion to dismiss for lack of personal jurisdiction.

**4.** <u>**In the alternative, this Court should permit Plaintiff to supplement its opposition with facts obtained through jurisdictional discovery**</u>

---

(N.D. Cal. March 31, 2014); 3:13cv2244 (N.D. Cal. May 16, 2013); 5:13cv122 (C.D. Cal. Jan. 18, 2013); 5:13cv62 (C.D. Cal. Jan. 9, 2013); 3:13cv48 (S.D. Cal. Jan. 9, 2013); 2:12cv10903 (S.D. Cal. Dec. 21, 2012); 4:11cv4271 (N.D. Cal. Aug. 29, 2011); 3:11cv4186 (N.D. Cal. Aug. 23, 2011); and 3:11cv4187 (N.D. Cal. Aug. 23, 2011).

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

Jurisdictional "[d]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (internal quotation marks omitted). Where a district court dismisses a case for lack of personal jurisdiction and denies the plaintiff the opportunity to conduct jurisdictional discovery, the Ninth Circuit will reverse where "[f]urther discovery on this issue might well demonstrate facts sufficient to constitute a basis for jurisdiction...." *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003.

The current record strongly supports the exercise of personal jurisdiction over Portigon. But should this Court disagree, Plaintiff would respectfully request the opportunity to take jurisdictional discovery and to submit a supplemental opposition based on facts uncovered through that discovery. Such an opportunity would only be fair, given the lengths to which STOLI investors like Portigon go to conceal their involvement from their victims.[6]

## B. <u>The First Amended Complaint states a claim against Portigon under Section 2704(b)</u>

Portigon contends that Plaintiff is not Norman Frank's executor or administrator, that he therefore lacks standing under Section 2704(b), and that Plaintiff's Section 2704(b) claim should therefore be dismissed with prejudice. For several reasons, the argument fails.

First, Plaintiff is Mr. Frank's executor. The term "executor" in 18 *Del. C.* § 2704(b) is not defined. Nor, for that matter, does the California Probate Code define the term "executor." "Undefined words in a statute must be given their ordinary,

---

[6] Should it be necessary to take jurisdictional discovery, Plaintiff will seek to uncover the precise details of Portigon's role in acquiring, maintaining, and analyzing the value of the Policy; of the contacts that Portigon made with Mr. Frank and his family in California; and of the actions it took to obtain Mr. Frank's death certificate in California.

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

COZEN O'CONNOR<br>401 WILSHIRE BOULEVARD<br>SUITE 850<br>SANTA MONICA, CA 90401

common meaning." *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994). Black's Law Dictionary defines "executor" as "[a] person named by a testator to carry out the provisions in the testator's will." *Executor*, BLACK'S LAW DICTIONARY (11th ed. 2019). Similarly, *Corpus Juris Secundum* defines "executor" as someone who is appointed by the testator. *See* 34 C.J.S. EXECUTORS AND ADMINISTRATORS § 215 (Feb. 2022) ("An executor is appointed by the testator to carry out the dispositions made under the testator's will."). Simply put, an executor is someone who is named in a will as an executor. Here, Mr. Frank's Will named Plaintiff as executor. (RJN, Ex. A.) Therefore, Plaintiff is, and at the time of bringing suit was, Mr. Frank's executor. As a matter of plain language, Plaintiff has standing to bring a claim under Section 2704(b).

Second, even if Plaintiff were not Mr. Frank's executor, the Probate Code would vest Plaintiff with legal authority to bring this action. In particular, Probate Code section 8400, subsection (b) states: "[A] person named executor in the decedent's will may, before the appointment is made or becomes effective, pay funeral expenses and take necessary measures for the maintenance and preservation of the estate." In bringing this action, Plaintiff took necessary measures for the maintenance and preservation of Norman Frank's estate.

Third, should this Court nonetheless conclude that Plaintiff is not the proper party to bring this suit, Rule 17(a)(3) and Rule 15 would each provide an easy fix.

Rule 17(a)(3) provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

Courts routinely apply Rule 17(a)(3) to allow a plaintiff who brought a claim in his or her personal capacity to join an estate or a personal representative as a plaintiff if the estate or personal representative should have been a plaintiff from the

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

start. *See, e.g., Jones v. Las Vegas Metropolitan Police Department*, 873 F.3d 1123, 1128-29 (9th Cir. 2017) (reversing district court decision that declined to allow plaintiffs, who had brought suit in the wrong capacities, to substitute the administrator of decedent's estate into the case); *Agena v. Cleaver-Brooks, Inc.*, No. 19-CV-00089-DKW-RT, 2019 WL 11248590, at *13 (D. Hawaii Oct. 31, 2019) ("The [seventeen] Plaintiffs lacking the capacity to sue offer no justification for why they brought suit without such authority or why they have yet to obtain that authority nearly a year after filing this lawsuit. Nevertheless, consistent with the longstanding policy in favor of deciding cases on the merits and Rule 17, the Court will afford Plaintiffs a reasonable opportunity to substitute the right party….") (internal quotation marks omitted).

The Ninth Circuit has explained that "[t]he purpose of this portion of Rule 17(a) is to prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable mistake has been made." *U.S. for Use and Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074-75 (9th Cir. 1989) (quoting the Notes of Advisory Committee on 1996 Amendments). In deciding whether to apply Rule 17(a), courts should also "consider the prejudice to the parties or the court's interest in litigating suits on their merits." *Continental Ins. Co. v. N.A.D., Inc.*, 16 F. App'x 659, 661-62 (9th Cir. 2001). If this Court needs to reach the question of whether to apply Rule 17(a) here, it should find the rule applicable because, at the time Plaintiff brought suit, it was arguably difficult to determine which party should sue, given that no personal representative had yet been appointed. Further, applying Rule 17(a)(3) would not prejudice Portigon (or any other defendants to this action) given that the addition of Mr. Frank's estate as a plaintiff would be a matter of form rather than substance. *See Continental*, 16 F. App'x at 662 (finding no prejudice by delay in substituting real party in interest and noting the "strong policy in favor of allowing a case to be heard on its merits").

Rule 15(a)(2) provides that, when a party seeks leave to amend its pleadings, "[t]he court should freely give leave when justice so requires." "This policy is to be

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citations and quotation marks omitted). Moreover, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading…." FRCP 15(c)(1)(B)   "While Rule 15(c) speaks only of a change in defendants, it applies by analogy to the substitution of plaintiffs." *Raynor Bros. v. American Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir. 1982).

In "those cases in which the plaintiff originally lacked capacity to sue or sued in his individual rather than his representative capacity," courts have "been noticeably prone to allow an amendment setting forth the cause in plaintiff's proper capacity and relating such amendment back to the date of the original pleading." *De Franco v. U.S.*, 18 F.R.D. 156, 160-61 (S.D. Cal. 1955).   "These decisions are based upon the general proposition that in such cases the defect is purely formal or procedural, and that essential justice requires that liberal amendment be permitted." *Id*. at 161. Courts routinely apply Rule 15 to allow for amendment and relation back where the plaintiff sued in his individual capacity but ultimately should have sued in a representative capacity on behalf of a decedent's estate. *See, e.g., Owen v. Paramount Productions*, 41 F.Supp. 557, 561 (S.D. Cal. 1941) (applying Rule 15(c) to allow plaintiff suing in her personal capacity to be substituted in as executrix); *Klinger v. Corrections Corp. of America, Inc.*, No. 4:11CV2299, 2012 WL 6200393, at *9 (N.D. Ohio Oct. 23, 2012), *report and recommendation adopted*, No. 4:11CV2299, 2012 WL 6200386 (N.D. Ohio Dec. 12, 2012).

The same logic would apply here. Amending the FAC to include Mr. Frank's estate as a party to the Section 2704(b) claim would be a matter of form rather than substance. The amended complaint would be based on precisely the same "conduct, transaction, or occurrence set out—or attempted to be set out—in the original

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

27

pleading," and would thus relate back to the date of the original complaint. FRCP 15(c)(1)(B).

In short, if this Court were to find that Plaintiff lacks standing, Rule 17(a)(3) and Rule 15 would each allow the Section 2704(b) claim to survive.

### C. The First Amended Complaint plausibly alleges that Portigon received the policy's death benefit

Portigon argues that Plaintiff has failed to allege Portigon's receipt of the Policy's death benefit, and that Plaintiff has thus failed to plead a cause of action under Section 2704(b). The argument fails.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lacey v. Maricopa County*, 693 F.3d 896, 911 (9th Cir. 2012) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *United States v. United Healthcare Insurance Company*, 848 F.3d 1161, 1179–80 (9th Cir. 2016).

"*Iqbal* demands more of plaintiffs than bare notice pleading, but it does not require us to flyspeck complaints looking for any gap in the facts." *Lacey*, 693 F.3d at 924 (internal citations omitted). Moreover, "[t]he *Twombly* plausibility standard ... does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017).

Section 2704(b) provides as follows: "If the beneficiary, assignee or other payee under any contract made in violation of this section receives from the insurer any benefits thereunder accruing upon the death, disablement or injury of the individual insured, the individual insured or his or her executor or administrator, as the case may be, may maintain an action to recover such benefits from the person so

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

receiving them." Here, Plaintiff alleges that a life-insurance policy on Norman Frank's life violated 18 Del. C. § 2704, and that Portigon received the policy's death benefit. If accepted as true, these allegations "allow[] the court to draw the reasonable inference that the defendant is liable" under Section 2704(b) "for the misconduct alleged." *United Healthcare*, 848 F.3d at 1179–80. Therefore, the claim is plausible on its face.

Portigon's argument to the contrary is based on the theory that Plaintiff engages in impermissible "group pleading" in alleging that "five Defendants, collectively, received a single death benefit." (Portigon Mem. at 14.) Whether "group pleading" is permissible depends on context. *See In re American Apparel, Inc. Shareholder Derivative Litigation*, 2012 WL 9506072, at *39–42 (C. D. Cal. 2012). "Group pleading" is appropriate when a plaintiff is uncertain, through no fault of his own, of the relationship among parties. *Agency Y LLC v. DFO Glob. Performance Com. Ltd.*, No. SACV201716JVSKESX, 2021 WL 4350056, at *3 (C.D. Cal. Aug. 4, 2021) (denying motion to dismiss based on alleged group pleading defect); *Heller v. NBCUniversal, Inc.*, CV-15-09631-MWF-KS, 2016 WL 6573985, at *3-4 (C.D. Cal. Mar. 30, 2016) (same); *Stepanyan v. United States*, CV 20-1774-CBM-MAA(x), 2020 WL 8365242 (C.D. Cal. Dec. 14, 2020) (denying motion to dismiss and noting that courts deny motions to dismiss "for improper 'aggregate' or 'group pleading' where the plaintiff would not have knowledge of each defendant's specific role in the alleged misconduct and the defendants have fair notice of the claims asserted against them"). Here, it is clear from context exactly what Portigon is alleged to have done: received the death benefit. Far from being impermissible "group pleading," this more than satisfies the liberal notice-pleading standard because "the facts are peculiarly within the possession and control of the defendant." *Soo Park*, 851 F.3d at 928–29. Portigon knows that Plaintiff is alleging that it received the death benefit, and is thus well equipped to respond to the allegation.

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

If this Court were nonetheless to disagree, Plaintiff should be given leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Based on the evidence that emerged from the New York state case, and in view of Portigon's conspicuous failure to support its Rule 12(b)(2) motion with a declaration denying that it had received the Policy's death benefit, Plaintiff can plausibly make the specific allegation that Portigon received the death benefit.

## IV.   <u>CONCLUSION</u>

As noted above, Plaintiff does not object to the dismissal of his unjust-enrichment claim against Portigon. This Court should otherwise deny Portigon's motion. In addition, this Court should permit Plaintiff to join Mr. Frank's estate and/or its administrator or personal representative as a plaintiff in accordance with Rule 15(c) and/or Rule 17(a)(3) within a reasonable period after Mr. Frank's estate is opened and/or an administrator or personal representative is appointed.

In the alternative, Plaintiff requests leave to supplement its opposition with additional facts obtained through jurisdictional discovery and/or to amend its allegations supporting its Section 2704(b) claim.

Dated: May 2, 2022                    COZEN O'CONNOR


                                      By:   /s/ Matthew E. Lewitz
                                          Matthew E. Lewitz
                                          Attorneys for Plaintiff
                                          HARLEY FRANK

PLAINTIFF'S MEMO OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
PORTIGON A.G.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT